# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 JUL 13 PM 4: 42

LORETTA G. WHYTE
CLERK

| IN RE: | PROPULSID PRODUCTS | * | MDL NO. 1355 |
| | LIABILITY LITIGATION | * | |

**01-2161**

* * * * * * * * * * * * * * * * * * * * * * *  SECTION: L

Marcell  Achord
Marcele  Achord
Cecillia  Ackal
Robert  Adams
Desarae A. Adams
Irene  Adams
Blanche Ann Adams
Carol  Adams
Wilbert  Adaway , Sr.
Wilbert  Adaway , Sr.
Terry  Adley
Karen S. Adley
Wayne  Albert , Sr.
Della  Alexander
Whitney  Alexander
Classie  Alexander
Sharon  Alexander (o/b/o Kyle Alexander)
Gloria Marie Alexander
Beatrice  Allen
Maurice  Allen
Stella  Allen
Johnell  Anderson
Dorothy  Anderson
Elaine  Anderson
Mary P. Anderson
Berrece  Andrews
Lisa  Andry
Jonavan  Antoine (a minor, through his
mother, Suzette Antoine)
Willa Mae Antoine
Zelma  Applebaum
Faye  Armand
Carroll  Arnaud
John  Arrington
Maxine  Atley

**JUDGE FALLON**

**MAG. JUDGE AFRICK**

# SECT. L MAG 3

- i -

Fee 150 00
Process
X  Dktd
CtRmDep
Doc.No.

Bridget J. Atley
Debra A. Aucoin
Barbarrina E. Aucoin
Joyce Austin
Shantelle Autin
Joey Avant
Judy Avant
Lonnie Averett (o/b/o Blake Averett)
Connie Aziz
Connie Aziz
Andrew J. Babineaux
Charlene Bacchus
Angele Baer
Herman Bailey
Clifford Raymond Bailey
Betty Bailey
James Baker
Candy Balsamo (injured, and her spouse,
Steven Balsamo)
Sharon Barba
Gertrude Barber
Dionne Barnes
Shirley Barraco
Joseph Barron
Joseph Barrow
Grace Barthel
Renesha J. Batiste
Adam Batiste
Shayla Batiste (o/b/o Pierre Laron)
Rhonda Baye
Donnell Bazile
Florence Bazille
Glen C. Beaird
Mitchell Beard
Edna Mae Beardon
Sherrell Beardon
Guy Becnel
Mary Begue
Mona Bei
Raywood Belanger
Henry Belezaire , Sr.
Cecelia Bell
Ronell Bell

Judy  Bellard
Josephine  Belte
Marie  Benedetto
Martha  Benjamin
Martha  Benjamin
Francis  Benoit
Amy  Benoit
Francis  Benoit
Andrew  Benoit
Linda Irene Berg
Ethel  Berger
Harding W. Berger , Sr.
Rose M. Bergeron
Charles  Bergeron
Joseph Floyd Bergeron
Bret  Berteau
Daniel  Beshears
Kurtis  Bess
Alvin  Bethard
Donetta  Bibbins
Linda  Bickham
Linda  Bickham
Robert Percy Bingham
James  Black
Dorita  Black
Geraldine L. Blackburn
Shelia  Blair
Gloria  Blakes
Joseph  Blanco
Phyllis  Blatcher
Phyllis  Blatcher
Nikki  Bloodworth
Ellis  Bonaventure
Robert  Bonds
Lucille  Bonvillain
Lucille  Bonvillain  (o/b/o Kelly Bonvillain)
Vickie  Booker
Marjorie  Booker
Brice  Borden
Albert  Bordenave , Sr.
Loretta J. Born
Sherre  Boteler
Mary  Botsay

Melvin  Boudreaux
Bobbie Ann Boudreaux
Chelsey  Bourgeois
Chelsey  Bourgeois
Carolyn R. Bourgeois
Dorothy  Bourque
Kelly  Boutte
Lena  Bowden
Philip  Boyer
Philip  Boyer
Henry  Bradford , Jr.
Loretta  Brandon
Rickie  Brandt
Junius  Braxton
Teresa S. Breaux
Evangeline  Brewer
Ernestine J. Brock
Judy  Brockman
Patricia  Brooks
Azzie Lee Brooks
Sheila  Brooks
Maxie  Brooks
Annetta  Brooks
Glen  Brooks
Judy  Brosonski
Jackie Marie Broussard
Flo  Broussard
Elea Mae Broussard
Stanely E. Brown
Louise  Brown
James  Brown
Betty J. Brown
Barbara  Brown
Marilyn J. Brown
George C. Brown
Gail A. Brown
Tanya  Brown
Rosadele  Brown
Monique  Brown
Ella M. Brown
Brenda  Brown
Kenneth J. Brown
Laureen  Bruno

Walter  Bryant
Richard  Buisson
Richard  Buisson
Vivian  Bullins
Vivan  Bullins
Raymond H. Bullock
Frederick D. Bunch
Viola  Burgess
Viola  Burgess
Barbara  Burkett
George  Burrell
Robert  Burrell
William  Busby , Jr.
Arthur C. Bush
Mary Louise Bush
Sandra  Butler
Carolyn  Butler
Era Scott Butler
Rhonda  Bynog
Kelsey  Bynog  (a minor, through her mother,
Rhonda Bynog)
Gwendolyn  Byrd
Lisa Luane T. Byrd
Eleanor  Cabibi
Rosary  Cabibi
Rodney  Calais
Maria  Callis
Jeanette  Cambre
Milton  Cambre
Robert Daryl Cambre
Gllory Jean Campbell
Annette  Canal
Joseph  Cangelosi
Rosa Lee Cannon
Ronald  Cantin
Eva  Carey
Leslie E. Carmouche  (a minor, through her
mother, Halette Saucier)
John D. Carnaghan
Annette  Carol
Suzette  Carrera
Elaine  Carrere
Merle  Carriere

- v -

Merle  Carriere
Alice Faye Carter
Selena  Case
Sandra  Cashen
Nancy D. Cashio
Mary G. Cason
Mabel  Castaing
Joshua  Castille
Sarah  Castille
Wilda  Ceasar
Fannie  Cephas
Jayne  Cesar
Jayne  Cesar
Diane  Chalaire
Charles  Chamberlain
Laurine  Chapman
Odelia  Charlot
Mary L. Chatmon
Caroline  Chauvin
Mary  Chavis
Karen  Chemier
Dawson  Chenevert
Dawson  Chenevert
Paul  Cheramie
Felicia M. Chess  (o/b/o her minor child
Mikayla A. Johnson)
Holly  Chesser
Mary  Chicola
Dolly  Chirchirello
Connie  Christie
Diane M. Christy
Catherine  Clade
Vivian A. Clark
Geraldine  Clark
Sarah  Clark
Jessie  Clark
Ethel  Clark
Albert  Clark
Cleveland  Clayton
Gail  Clement
Dale  Clement
Etta  Clements
Sheila  Cloud

Robert L. Cobb , Sr.
Raymond  Coco
Raymond  Coco
Elise  Colbert
Annie E. Colbert
Leticia Ann Cole
Brenetta  Coleman-Watts
Evelyn Etta Collier
Anita  Collier
Judith  Collins
Victoria  Collins
Norma  Collins
Martha  Collins
Douglas F. Collins
Leonard  Collins
Dedrie  Comeaux
Dedrie  Comeaux
Robert  Conner
Paul M. Cooper
Rae W. Cope
Shirley  Corley
Vergie  Cormier
Vergie  Cormier
Warren  Cousin
Anthony  Cousins
Laurence  Couvillion
Louise  Craig
Rosie  Crochet
Rosie  Crochet (deceased)
Judith Parke Crotwell
Sandra M. Csapo
Robert S. Cunard
Mary Jane Cunningham
Phelosee  Cyiark
Mildred  Dabney
Mildred  Dabney
Barbara  Daniels
Cheryl  D'Annunzio
Cheryl  D'Annunzio
Karen  Dantin
Nora Jane Darby
Merlene  Daring
Mary C. Dauenhauer

- vii -

Mary  Dauenhauer
Ray A. Dauzat
Charles  Davenport
Lillian T. Davis
Toshiba  Davis
Lolita  Davis
Dona Nicole Davis
Gloria  Davis
Wonda Cathy Davis
Tanell  Davis
Toni Diane Davis
Mollie A. Davis
Gina  Davis
Margaret  Davis
Lizzie M. Dawkins
Patricia  Dawson
Davenski  Day
Samuel  Day
Samuel  Day
Britney  Dean
Denise  Decedue
Frank  DeCorte
Louis  Dedon
Robert  Delone
Robert  DeVall
Trent  DeVillier
Merril  Dickerson
Merril  Dickerson
Tammie  Dillion
Tina  Dinkins
Gwendolyn  Dison
Debra W. Dixon
Mike D. Dixon
Paula  Dixon
Jane  Doe
John  Doe
Ella Mae Doiga
Calla  Donatto
Calla  Donatto
Archie Mae Dore'
Sharon A. Dorsey
Bernice  Dorsey
Stella  Dorsey

Ruthie  Dorty
Kevin  Dotson , Sr.
Goldie  Doucet
Jackie  Doucet
Jackie  Doucet
Theresa  Douglas
Joseph  Dove
Ida  Downs
Jacob  Doyle
Jacob  Doyle
Charlotte  Drake
Darnell W. Draughter , Jr.
Frances L. Drew
Winnie Myers Dubois
Henry Lee Dubose
Helen  Ducayag
Lydia  Duet
Debbie  Duhon
Debbie  Duhon
Ophelia Jones Dumars
Gwendolyn  Dupard
Alvin John Duplantis
Janice  Duplessis
Joy  Dupre
Whitney  Dupre , III
Isaac  Dupree
Christine  Duran
Sadie  Durr
William David Eackels
Mary J. Earls
Elouise  Easley
Ruth  Eaves
Ruth  Eaves
John  Eaves
Shona Lucinda Ebarb
Eunice  Eddins
William  Eleby
Stephanie  Eleby
Brenda Lee Ellis
Colita  Ellis
Annette  Embry
Mary  Emery
Freddie  England

Kimberly Epps (o/b/o Kavarea Applewhite)
Norma J. Epps
Ben Eshleman
Betty Joyce Eubanks
Lilly Ewell
Barbara Fairley
Edna Farlough
Lisa D. Farmer
Naomi Faulkin
Naomi Faulkner
Colonel R. Fazzio
Dominick Fehn , Jr.
Larry Fields
Virgie M. Finch
Stephen Findley
Dorothy Finger
Dorothy Finger
Stephen Finley
Rosemary Finney
Carolyn Jean Fisher
Jerry Fitch
Dorothy Fitch
Jerry Fitch
Lucy S. Fitzgerald
James Fleetwood
Gloria Fleming
Flora Fleming
Linda Ruth Fleming
Jesse Dale Folds
Nell Fontenot
Patricia Fontenot
Patricia Fontenot
Clarice Collins Ford
Agatha Ford
Lindsay Marie Foreman
Ida P. Fortenberry
William Claude Foster
Elden Foux
Donald Francis
Enola Francis
Alicia Francisco (o/b/o Christiana Rue)
Dora Francois
Hazel V. Francois

Ollie M. Franklin
Sherman Franklin
Charlotte A. Franklin
Rhonda Franklin
Ruby Elizabeth Frazier
Sylvia Ann Frederick
Maxine Lee Frederick
Pam Freeling
Joyce Freeman
Ashley Freeman
Ezola Freeman
Winnie Frith
Winnie Frith
Pamela E. Froman
Cindy Frontha
Christine Furlow
Sonia A. Futrell
Mattie Gacie
Veola W. Gaines
Edith Cadora Gales
Duris Gallagher
Yvonne Galland
Linda Hurst Galmon
Herbert Ganey
Maurice C. Gardner
Maythel Gardner
Gloria Garner
Vivian Garnett
Warren Garnett
Dawn Garrett
Catherine Gassen
Cynthia F. Gates
Linda L. Gates
Lorraine Gendron
Glenn Gennaro
Flora George
Marian George
Lucille George
Marian George
Desray Georgetown
Shirley Gerard
Charles J. Gervais
Christopher Giaffeo

Carol Gene Gibson
Inez  Gibson
Jan Robertson Gibson
Lula  Gilbert
Robert  Giles
Carl  Gill
Anderson  Gilmore
Carmelo  Giorgio , Jr.
Morris  Gipson
Carol  Gipson
Shelly P. Giroir
Earnestine  Girtley
Margaret  Givens
Beryl  Gleber
Morgan  Godeaux
Victoria  Gomez
Victoria  Gomez
Manuel  Gonzalez
Esther M. Gooden
Venetia  Gooden
Oscar  Goody , Jr.
Oscar  Goody , Jr.
Sally M. Gordon
Johnny M. Gosey
Jeffery  Gosey
Christopher W. Graffeo
Eddie  Granderson
Merry  Grant
Joann  Graves
Janet  Graves
Scottie  Gray
Jared  Gray
Amoriel  Gray
Denesha  Gregoire
Paul  Gregoire  (individually and as
administrator for the estate of his minor child,
Derrion Gregoire)
Kathy  Gremillion
Andrew Poni Grezaffi
Andrew  Grezaffi
Judy  Griffin
Betty  Griffin
Syliva A. Griffin

Candace Michelle Gros   (20 years old, but
mentally and physically handicapped -
guardian: Teresa C. Gros)
Susan  Groves
Aldred  Growe
Jane  Guiden
Evelyn  Guidry
Evelyn  Guidry
Cheryl  Guidry
Howard Cecil Guillera , Jr. (estate of)
Calvin  Guillory
Calvin  Guillory
Wilton  Guillory
Joan  Hadley
James  Haile
James  Haile
Margaret  Hall
Katie  Hall
Marian L. Hall
William  Hammons , III
Sundy  Hanson
Anne  Hardy
James O. Harp
Ollie D. Harper
Bennie B. Harrell , Sr.
Laverne  Harris
Estelle  Harris
Voncellie  Harris
Voncellie  Harris
Jessie  Harris
Emma  Harrison
Justina  Hart
Carol D. Hart
Karen  Hart
Richard  Hart
Catherine  Hart
Karen  Hart
Claudia  Hatfield
Hazel  Haughton
Kay  Hayden
Mary  Hayes
Mary  Hayes
Joyce  Hayes

Loretta  Heard
Julie Michelle Hebert
Mildred  Hebert
Marshall  Hebert , II
Beatrice S. Helm
Rosalind  Henderson
Bernadine  Henderson
Stanley  Henley
Mary  Henry
Cleo  Henry
Magnus  Henry
Leola  Herbert
Marshall  Herbert , III
Betty  Herbert
Johnny  Hernandez
Melba  Hershey
Carolyn  Hicks
Ruby  Hill
Joseph  Hill
Mercie D. Hill (Lyons)
Frederick  Hilton
Joyce  Hinton
Jean  Hinton
Donna  Hirstins
Johnny  Hodge
Haley  Hoffman
Janie  Hogan
Connie S. Holden
Donald  Holley
Judy C. Hollins
Willis S. Hollis
Clara  Hollman
Hattie  Holmes
Darleen  Hooks
Mary G. Hopkins
Joyce  Horne
Christi  Horowitz
Carol  Horton
Yukita  Howard
Scott Andrew Howard
Betsy  Huddle
Sara  Hudson
Mary  Hudson

James Edward Hughes
Duane  Hull
Debbie  Hunt  (o/b/o Terry Bennett)
Mary  Hurley
Vera Denise Hutchinson
Mary Lee Hymel
Barbara  Irvin
Cecil  Jackson
Raven Annette Jackson
Palhrie  Jackson
Cecil  Jackson
Latriche  Jackson
Ruth R. Jackson
Beverly  Jackson-Gray
Juanita C. Jacob
Josephine  Jacobs
John  Jacobsen , Sr.
Dorothy  Jacquot
Dorothy  Jacquot
Dorothy  Jacquot
Roger Walton James
Brenda  James
Carl  James
Rita  James
Marilyn  James
William  Janes
Shirley M. Jarreau
Katie  Jefferson
Brenda  Jefferson
Irma  Jenkins
Mildred  Jenkins
Gloria  Jenkins
Pamela  Jenkins-Boone
Edward Ray Jobe
Shirley  John
Mack  Johnson
Delores  Johnson
Joyce  Johnson
Lee Ester Johnson
Sherry Mae Johnson
Whitney  Johnson
James  Johnson
Ella Louise Johnson

Gloria  Johnson
Brenda Marie Johnson
Sally Sue Johnson
Corlette  Johnson
Barbara Ann Johnson
George  Johnson
Johnny  Johnson , Jr.
Karen H. Johnson
Mack  Johnson
Philip  Johnson
Carolyn Joyce Johnson
Nannette  Johnson-Young
Vernon  Jones
Nettie  Jones
Joycelyn  Jones
Betty  Jones
Glen  Jones
Freddie  Jones
Glen  Jones
Sandra  Jones
Donnis  Jones
Sandra  Jones
Georgia  Jones
Beverly Ann Jones
Doris  Jones
Bobbie  Jones
Carrie  Jones
Joyce  Jones
Diana  Jones
Georgia  Jones
Irie  Jordan
Ophelia M. Joseph
Jesse  Joseph
Linda Ann Joseph
Everette  Joshua , Sr.
Francisco  Juarez
Juarez
Lennie  Juneau
Clifton  Karr
Robben  Karr
Robert  Katz
Foster E. Kawaler
Prince Mack Kaywood , Jr.

Fern  Keeling
Charlene  Kelly
Dave  Kenney
Janet  Keshk
Ames  Kidder
James H. Kihneman , Sr.
Robert  Kimbrell
Pricilla  King
Vernell  King
Odgen  King
Marion S. Kingsberry
Janice  Kinnon
Sharon Lynne Knippers
Eric  Koeneger
Rhonda Rye Kramer  (o/b/o her minor child
David Charles Kramer)
Nikol  Kremer
Cameron  Kremer
Michelle  Labat
Linda Gail Labom
Charlene  LaCoste
Del Marie  LaCour
Merrie  LaFargue
Raymond V. Laffoon
Crandel and Kimberly  LaFleur  (on behalf of
Crandel LeFleur, Jr., deceased)
Diane M. Lago
Ilda  Lambert
Pamela  Lambert-Moore
Albert  Lamonte
Janice  Lancaster
Myrna  Landry
Myrna  Landry
Yvonne  Landry
Ray  Landry (deceased, through his wife,
Carlette Landry)
Roy P. Landry
Mary  Laners
Shari  Lange
Donna  Langley
Gloria  LaRocca
Larry  Larousse
Beulah  Lathan

Mamie  Lattier
Rhonda Marie LaVergne
Leander  Lavergne
Yvonne  Lavigne
Joann  Lawler
JoAnn  Lawler
Mary  Lawson
Kevin  Lazoroe
Rita  Leach
Joyce  Ledet
Barbara  Lee
Johnnie  Lee
Donald G. Lee
Erin  Lee
Judith  Leger
Judith  Leger
Alice  Leger
Alice  Leger
Nesby  Legier
Olene L. LeGrand
Gloria  LeGros
Gabriel Jr. Lehman
Diana  Lemoine
Shirley  Leonard
Catha  Leonard
Georgette  Lestrade
Arlene  Leviege
Melvola  Leviege
Patsy  LeVillier
Saundra  Levy
Alana  Lewis
Ronald  Lewis
Patricia  Lewis
Jessie  Lewis
Ignatius  Lewis
Wanda H. Lewis
Joann A. Lewis
Jay  L'Homme
Jay  L'Homme
Wayne D. Liegey , III
Shawn  Liggins
Raymond Earl Lincks
Nicole  Lirette

Doris  Lisi
Dakota Wayne Lloyd
Gail  Lodriguss
Sybil  Lofton
Kathryn  London
Joan L. London
Mark Lee Longino
Anthony  Losetta
Cynthia  Lott
Donald  Loupe
Margaret  Louviere
Bobby  Love
Mary  Lucas
Josh  Lucky  (a minor, through his parents,
Jana and Kerry Lucky)
Luke  Lucky  (a minor, through his parents,
Jana and Kerry Lucky)
Mercie  Lyons
Germanne  Mack
Pearl A. Mack
Richard  Maddox
Fransisco  Madrid
John Jose Madrigal
Dolly  Mann
Faith  Manning
Mark  Mantrana
Kallie  Marcantel
Eugene  Marceaux , Sr.
Eugene  Marceaux , Sr.
Oray  Marks , Sr.
Gloria  Marks
Sylvia  Marrero
Helen  Marshall
Navia  Marston
Ida  Martin
William McKinley Martin , Sr.
Claudia  Martin
Rita M. Martinex
Parrish  Masters  (o/b/o Kaitlyn Masters)
Donna  Masters  (o/b/o Cody Masters)
Louis  Matherne
Mark  Matrana
Ronald  Matte

Ronald Matte
Debra Matthews
Jeanine Maxwell
Dorothy Mayes
Dorothy Mayes
Lessie McCoy
Lessie McCoy
James Edward McDonald
Denetre Marie McFarland
Judith McGill
Jimmy McJamerson
Rodney McKinney
Jared L. McKinney
Minnie F. McKinney
Carrie S. McKinney
Connie McKneely
Connie McKneely
Lucille McKnight
Indrid McRae (o/b/o Lauren McRae)
John McWhite
Delores Meche
Delores Meche
Amanda Melancon
Gerald Melerine
Rita Menard
Mary L. Menyweather
Nancy P. Meshell
Morgan Messina
Vera O. Meyers
Penny Mikkijon
Alice Miles
John Miller
Earl Miller
Andre Miller
Russell Miller
Rhoda Minor
David Mire
James Mitchell , Sr.
Lillie Mitchell
Ruthie Mitchell
Renee L. Monette
Alex Montgomery , Jr.
Kiasa Moore

Versia  Moore
Carolyn O. Moore
Patricia  Moore
Deborah  Moore
Mary  Moore
Patricia  Moore
Gloria J. Moore
Sidney P. Morales
Rebecca  Moran
Brianna  Moran
Rebecca  Moran
Lenas  Morant
Weston  Moreau
Robert  Morgan
Elnora  Morgan
Douglas  Morgan
Lois  Morin
Carol  Morris
Bernice  Morris
Floyd  Morris
Lloyd  Morris
Dora B. Morris
Mildred  Morris
Bessie  Morris
Bessie  Morris
Jimmy  Morris
Natalie Marie Morris
Julius  Morvant , Jr.
Lenas  Morvant
Julius  Morvant , Jr.
Terrell  Moss
Victor  Motton
Julia  Muhs
David M. Murray
Beverly  Murray
Marion  Muse
Rose L. Musgrove
Gladys  Myers
Linda  Naquin
Joyce  Narwood
Joyce  Narwood
Lori  Nash
Clemente  Navarrete

Baylee Ned
Deshawn Ned
David Nelams
Althrial Nelson
Roy Nelson
Nelda Netters
Judy Nicholas
Wanda Nichols
Erlean S. Nickles
Diane Nicolay
Mary Nini
Mary Nini
Denver Nobles
Denver Nobles
Joel S. Noland
Mariette Norman (o/b/o Crystal Norman)
Sandra Norman
Cynthia Normand
Anthony Noullet
Ken Russell Nowlan
Dennis Nunenmacher
Chris Nygren
Sam Oliver
Diane Olivier
Richard Oragoy
Collan Ortego
Collan Ortego
Lorena Osborne
Leona Ourso
Cecelia Bell Overton
Winnie J. Pace
Robert Paige
Elman P. Palao
Joseph V. Palazola , Sr.
Patsy A. Palmer
Jessie Parker
Nedra Parker
Jessie Parker
Mercedes Parker
Ada Parnell
William L. Parrott
Leona Patterson
James Jr. Patterson

Loretta  Patton
Hazel  Paul
Nylass  Payne
Dorothy  Payne
Judy  Pedigo
Judy  Pedigo
Anthony  Pellerin , III
Mikki Jan Penny
Maria  Perez
Ethelyn  Permillion
Nicklos  Petho
Saundra  Peuschold
Lucretia  Pichon
Veronica  Pidgeon
Irma  Pierce
Ada  Pierce
LaRon  Pierre
Michael  Pinto
Octaviaq  Pitre
Paul J. Pitre
Rodney E. Pittman
David  Pittman
Virginia  Player
Denise  Pointer
Shirley  Porter
Ronald  Pourciau
Andrea  Powell
Betty  Powell
Frank  Powell
Mayola  Praylow
Donald R. Price , Sr.
Kiara  Price
Ruby  Price
Ermestine  Pritchett
Doris  Pritchett
Geraldine  Prudhomme
Lillie  Pryer
Gerald  Punch
Evelina  Pursley
Patricia  Purvis
Julia  Queral
Jennie  Quinn
Julio  Ramos

Lynda  Randle
Selena  Rankins
Sarahphine  Rayford
Julie  Reason
Joseph  Reed
Jacqueline  Reed
Clara  Reno
Kelly E. Requardt
Helen  Rester-Daigle
Roosvelt  Revish
Peggy  Rhoden
Cynthia Anne Rich
Majorie  Richard
Evelyn Thomas Richard
Marjorie  Richard
Evelyn Thomas Richard
Paul  Rivet
Roanld  Rizzo
Alice L. Roach
Alton T. Robbins
John  Roberts
Betty  Robertson
Yolanda  Robertson
Bernice  Robertson
Susan  Robie
Theresa  Robinson
Allie  Robinson
Barbara  Robinson  (o/b/o Stella Robinson)
Mable  Robinson
Shirley  Robinson
Noella  Rochon
Barbara A. Rodgers
Crystal  Rodgers
Scott  Rodrigue
Hayley  Rodriguez
Lucetta Anthony Roger
Shelton  Rogers
Steven  Rogers
Annie  Rogers
Anthony  Rogers
Annie  Rogers
Clarence  Rome
Daniel  Romero

Bonnie  Romero
Maybelle  Rose
Barbara J. Ross
Wanda  Ross
Mary  Ross
Linda  Ross
Allen Yvon Roston
Roland  Roussell
Sheila  Roussell
Linda  Rubbins
Ginger  Rubin
Barbara  Ruffin
Dominick  Ruffino
Rosalie Ferino Russell
Virginia  Rutherford
James  Rutledge
James  Rutledge
Edward  Sanchez
Sheila  Sanders
Lurleen  Sanders
Patsy  Savoie
Patsy  Savoie
Joseph  Scalfani
Charles H. Schenck
Myrtle  Schenck
Edna  Schexnaider
Edna  Schexnaider
Lisa R. Schexnayder
Felix  Schillesci
Rita  Scioneaux
D'Andre  Scott
Phyllis  Scott
Dale  Scott
Florence  Scott
Michelle  Scott-Tumblin
Ronald  Seagrave
Debra  Sellers
Martha  Sepulvado
Ethel  Serpas
Joanne  Sessions
Jessie  Sewell
Wanda  Shaffer
Clara  Shell

Dorothy Shepherd
Sandra Sheridan
Carolyn Shingledecker
Kerry Sholars
James Sholes
Elizabeth Shuff
Elizabeth Shuff
Salvador Sicarelli
Muriel Siles
Kenneth Sillivan
Cleve Henry Simmons
Eugene Simmons
Eugene Simmons
Katherine Simon
Charles A. Simon
Ronald Jr. Sims
Saul Singer
Ellen Sisung
Mary Sloan
Jan Smith (c/o Ronald Smith)
Juanita Smith
Barbara Smith
Darriel Smith
James Smith
Kimberly Smith
Robin Smith
Janice Smith
Marlene Smith
Kimberly Smith
Mabel Smith
Rose Smith
James Allen Smith
Cynthia Smith
Joyce K. Smith
Alvin Smith
Bobbie Smith
Ruby G. Smith
Gloria Smoot
Odelia Soileau
Tamera Solomon
Gloria Sorrell
Alethea Spears
Alethea Spears

- xxvi -

Ethaline Specht
Lynetta Spencer
Cecile M. St. Julien
Patrisha St.Cyr
Jeffrey Stajduhar
Vanessa Stanfield
Mary Starr
Mary Starr
Lucille Stelly
Debra Sterling
Carl Steven
Canaan Stevens
Elsie Stevens
Elsie Stevens
Canaan Stevens
Eileen Steward
Ethel Stewart
Sandra Stewart
Chantel Stewart
Jerrico Stewart
Nellie Stokes
John Stokes
Sharon Stokes
John Storms , III
Gloria Stoulig
Shirley Strehle
Betty Strogen
Thommie Sumerall
Jewel Sumrall
Carlton Sutton
Allen Sutton
Carlton Sutton
Eller Sutton
Mary Swan
Donald Talbot
Rosie Tardieff
James Taylor
Matilda Taylor
Eva Taylor
Albertha Taylor
Rudolph Taylor
Trenese Taylor
Eva Taylor

Rosemary  Taylor
Christopher  Taylor
Lisa  Tebault
Brian  Tebault
Janel  Tedesco
Harriet  Tharp
Lillian  Thibodeaux
Tommy R. Thibodeaux , II (individually and
as administrator of the estate of his minor
child Lexi-Rae Thibodeaux)
Jospeh  Thibodeaux
Lillian  Thibodeaux
Celena  Thomas  (individually and as tutrix
for her minor child Chandler Thomas)
Josephine  Thomas
Tommie  Thomas
Alta  Thomas
Amy  Thomas
Tre'vion  Thomas
Mae  Thomas  (o/b/o her minor son, Joseph
E. Thomas, and on behalf of her deceased
daughter, Heather Renea Thomas)
Consuella  Thomas
Evantha  Thomas
Grace  Thompson
Peggy  Thompson
Kevin W. Thompson
Gregory  Thompson
Jennifer  Thompson
Brenda  Thornton
Jerry  Thornton
Annie  Tibbs
Alton  Tillery
Cheryl  Tillison
Christina  Tillman
Elaine W. Tims
Lonnie  Tomsa
Lonnie  Tomsa
Helen  Tonth
Rosalie  Tortorich
Ashton  Touchard
Ulyose  Toup
Wanda  Toups

Terry  Tourelle
Melissa  Traina  (o/b/o her minor child, Faith
M. Traina)
Joseph  Treminie
Carolyn Marie Treuting
Evelyn Schnadelbach Treuting
Robert Louis Treuting , III
Myke  Triche
Senora  Trotter
Janice  Tullos
Patsy  Tullos
Laura  Turner
Lynette  Turner
Valerie  Turner
Caroline  Umberger
Nancy  Ussery
Virginia  Valentine
Marion  Van Buren
Richard  Van Norman
Rosie Lee Varnado
Mayo  Vascocu
Patricia  Vaught
Holly G. Vicknair
Lena  Vidal
Jennifer  Vidrine
Jennifer  Vidrine
Diane  Vinet
Charles  Vitter
Sharon  Walker
Ethel  Walker
Mary Ann  Waller
Iris J. Walters
Roderick  Ward
Corine  Ward
Dymanique  Wardsworth
Edward  Ware
Clara  Ware
Estella  Washington
Evette  Washington
Vivian R. Washington
Betty  Washington
Diane  Washington
Estella  Washington

Jacqueline  Watkins
Judith  Watson
Lee  Watts
Edith  Weatherford
Gabrielle  Webb
Cecile  Webb
Brenda  Weber
Virginia Rae Weber
Betty  Weinmunson
Patricia  Wernert
Christi  Weston
Mona  Weston
Diana  White
Linda  White
Diana  White
Ethel  White
Tammy  White
Evelyn  White
Lashonda  White
Nila Marie White
Lynn  White
Dorothy  Whitehead
David  Whiteside
Lori  Wilka
Kathy  Wilkerson
Chauncey  Wilkins , Jr.
Virginia Gail Wilkins
Robert  Wilkinson
Caritha  Williams
Patricia  Williams
James  Williams
Jerry  Williams
Margaret  Williams
Ededral  Williams
Ethel  Williams
Laura  Williams
Peggy  Williams
Jessie  Williams
Barbara Coleman Williams
Mitchell  Williams
Amy  Williams
Louis Murphy Williams
Inez M. Williams

- xxx -

Ivy  Williams
Ededral  Williams
Lois  Williams
Ernest P.  Williams
Nicole  Willis
Manuel  Willoz
John  Wilson
Williana  Wilson
Barbara  Wilson
Williana  Wilson
Elijah  Wilson
Elaine  Wilson
Helen Ruth Wilson
Rita Rae Wilson
Patrice  Wilson
Kailyn  Wiltz
Dianna Shaw Winslow
Cheryl L. Wogan
Marcus  Wood
Gloria  Wood
Renard Lee Woodard
Mabel  Woolledge
Tommie H. Wright
Callie  Wyble
Karen  Wyseman
Claudette  Yarber
Barbara  Yielding
Susan  Young
Nanette  Young-Johnson
Eldrid  Zeno
Melanie  Zito
Joseph  Zulli

*Parties — Exhibit B*

Jacquelyne Anthony
Albert L. Anthony
Suzette Antoinne  (o/b/o her minor child
Jonovan Antoine)
Calvin Ray Arceneaux
Gerald  Arceneaux
Paul  Arceneaux
Vickie Lynn Arceneaux
Bobbie Jean Arceneaux

- xxxi -

Linda Borja Arnone
Steven Balsamo
Candy Balsamo
Joseph Blanco (o/b/o Carmelite Blanco,
deceased)
Anthony Blanco
Anthony Blanco (o/b/o Carmelite Blanco,
deceased)
Carmelite Blanco
Joseph Blanco
Kelly Patrice Labbe Boutte
Denfer G. Boutte
Selda Jenkins Braxton
Jackie Marie Broussard
Ronda Bynog (o/b/o her minor child Kelsey
Bynog)
Rosary Cabibi (deceased)
Barbara Treuting Castiex
Diane Chalaire (o/b/o Burton Chalaire)
Felecia Michele Chess
Mary V. Chicola
John Doe
Jane Doe
Archie Mae Dore'
Alvin John Duplantis
Lilly Ewell
Catherine A. Fayard
Calvin Clifford Fayard , Sr.
Mary Landor Francis
Donald Joseph Francis
Linda Manale Gagliano
Irene C. Gallagher
Duris James Gallagher
Beverly George (o/b/o her minor child
Lucille George)
Morgan J. Godeaux
Helen R. Godeaux
Paul and Deneshia Gregorie (o/b/o their
minor child, Derrion Gregorie)
Teresa C. Gros (o/b/o Candace Michelle
Gros, 20 years old but mentally and
physically handicapped)
Denise Wallenburg Guillera

Michael A. Johnson
Linda Ann Joseph
Everette Joshua , Sr. (deceased)
Rhonda Rye Kramer
Betty Jane LaBorde
Crandel and Kimberl LaFleur (o/b/o their
minor child, Crandel LaFleur, Jr., deceased)
Karlette Landry (o/b/o Ray A. Landry,
deceased)
Sharon Lewis
Jana and Kerry Lucky (o/b/o their minor
child Luke Lucky)
Jana and Kerry Lucky (o/b/o their minor
child Josh Lucky)
John Peter Manale , Jr.
William McKinley Martin , II
Jenny Lynn Martin
Joanne Tolliver Donnan Martin
Eddie Miller
John Miller , Jr.
Renee L. Monette
Charles A. Monette
David Nelams
Denver Nobles
June Palao (wife of Elman Palao)
 Charlotte Johnson Paulson
Stephanie Schuyler Pittman
Xiomara Ramos (wife of Julio Ramos)
Lillian Remi
Karen Romero
Daniel J. Romero
John R. Russell
Katherine Ann Saucier
Halette Saucier (o/b/o her minor child Leslie
E. Carmouche)
Mary Scarsborough (o/b/o James
Scarsborough)
Joseph M. Shelfo
Rosemary Terre Shelfo
Albert St. Julien
Cecile M. St. Julien
Tommy Thibodeaux , II (o/b/o of his minor
child, Lexi Rae Thibodeaux)

Celena  Thomas  (o/b/o her minor child
Chandler Thomas)
Mae  Thomas
Mae  Thomas  (o/b/o of her minor child
Joseph E. Thomas)
Melissa  Traina
Evelyn Schnadelbach Treuting
Dawn Murray Treuting
Robert Louis Treuting , III
Carolyn Marie Treuting
Patrick James Treuting
Robert Louis Treuting , Jr.
Allison  Underhill  (o/b/o William Underhill)
Mona  Weston
Albert  Weston , Sr.
Virginia Gail Wilkins
Ellen Marie S. Williams
Patrick  Williams
Patricia  Williams  (o/b/o Ezekiel Shepherd)
Dixie R. Wilson
Helen Ruth Wilson
Rita Mae Wilson

|  |  |
|---|---|
|  | * |
| **Plaintiffs,** | * |
|  | * |
| **vs.** | * |
|  | * |
| **JOHNSON AND JOHNSON AND** | * |
| **JANSSEN PHARMACEUTICA, INC.,** | * |
|  | * |
| **Defendants.** | * |
|  | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MASTER COMPLAINT OF LOUISIANA PROPULSID CLAIMANTS

Louisiana Propulsid Claimants, specifically named and identified by parish of residence on Exhibits "A" and "B," attached hereto and incorporated herein by reference, through undersigned counsel, file this Master Complaint and aver as follows:

## I. JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 (diversity) in that the state of citizenship of each Plaintiff is different from the state of citizenship of the Defendants, and the amount in controversy between each Plaintiff and the Defendants exceeds $75,000.00, exclusive of interest and costs.

2.      Venue is properly set in the District Court pursuant to the order of the Judicial Panel on Multidistrict Litigation dated August 7, 2000.

## II. PARTIES

3.      Plaintiffs are all residents of the State of Louisiana who purchased and/or used the prescription drug Cisapride, more commonly known by its brand name in the United States, Propulsid, and their spouses, children, parents and siblings, all of whom have been injured as a direct result of Propulsid.   Plaintiffs individually listed and identified on Exhibit "A" are Louisiana residents who have purchased and/or used Propulsid.  Plaintiffs individually listed and identified on Exhibit "B" are the spouses, children, parents, and siblings who have incurred loss of consortium, service, and society, loss of love and affection, loss of support and other damages cognizable under La. Civil Code Articles 2315, 2315.1 and/or 2315.2.

4.      Defendant Johnson and Johnson ("Johnson"), is a New Jersey corporation with its principal place of business in New Brunswick, New Jersey.  At all material times, Johnson through

- 1 -

its wholly-owned subsidiary, Janssen Pharmaceutica, Inc. was in the business of researching, developing, manufacturing, promoting, marketing, distributing, and selling the prescription drug Propulsid.

5.      Defendant Janssen Pharmaceutica, Inc. ("Janssen"), a wholly owned subsidiary of Johnson, is a New Jersey corporation with its principal place of business in Titusville, New Jersey. At all material times, Janssen was in the business of researching, developing, manufacturing, promoting, marketing, distributing, and selling the prescription drug Propulsid.

### III. FACTS

6.      Propulsid is the United States trade name for the prescription drug known as "Cisapride" promoted and prescribed to treat gastroesophageal reflux disease (GERD). GERD is a motility disorder in which the muscles of the esophagus and stomach, as well as the esophageal sphincter, do not operate properly.

7.      Propulsid was approved by the FDA for treatment of adults with nighttime heartburn due to GERD, as an adjunct to treat these patients who did not adequately respond to other therapies. The Defendants first put Propulsid on the United States market in 1993.

8.      At all times material hereto, Defendants researched, developed, manufactured, labeled, promoted, marketed, advertised, distributed in interstate commerce, and sold Propulsid from New Jersey. It was advertised by the Defendants as safe and effective.

9.      The 1993 approval of Propulsid by the FDA only pertained to usage by adults. The Defendants failed to obtain approval from the FDA concerning the use of Propulsid for pediatric use, although they marketed a cherry flavored liquid suspension formulation that was primarily for pediatric use.

- 2 -

10.     The Defendants aggressively promoted their Propulsid prescription drug upon gaining approval in 1993 from the Food and Drug Administration ("FDA") to market Propulsid in the United States. Propulsid was touted as one of an entirely new class of synthetic drugs called "prokinetic" agents. The Defendants began a marketing and promotional program for it in an effort to create a demand for the drug.

11.     Defendants' strategy, beginning in 1993, has been to aggressively manufacture, market and sell Propulsid as safe and effective, falsely misleading potential users, including the Plaintiffs and physicians, concerning the safety, efficacy and the risks associated with the use of its drug.

12.     The Defendants engaged in extensive advertising and marketing efforts directly to consumers, also targeted physicians and other healthcare providers, and disseminated false and misleading materials to them which failed to disclose the risks associated with the use of Propulsid.

13.     By 1994, Propulsid ranked sixth (6th) among the most advertised prescription drugs.

14.     Defendants' advertising program, by affirmative misrepresentations and omissions, falsely sought to create the impression that the use of Propulsid was safe for human use, more effective than other prescriptions or over the counter medications, and had fewer side effects and adverse reactions than other heartburn medications.

15.     As part of Defendants' aggressive marketing campaign, Defendants used a trained staff known as "detail people" to promote and market Propulsid to doctors, hospitals, pharmacists, health insurance companies and HMOs. Propulsid was one of the most heavily detailed pharmacological products. In 1994, Propulsid ranked 24th on a list of the thirty most heavily detailed products.

- 3 -

16.     For the quarter ending in July 1994, Propulsid detail people made more than 105,000 detail visits. The Defendants' detail people have since made more than one million detail calls to physicians, hospitals, pharmacists, and others to promote the use of Propulsid. The Defendants' detail people effectively encouraged "off label" prescribing of Propulsid for the treatment of conditions other than that for which it was approved by the FDA, and for pediatric use, for which the FDA denied approval.

17.     In 1995, Defendants expanded their marketing efforts to include an extensive direct-to-consumer advertising campaign targeting individuals who suffer from nocturnal heartburn. The direct consumer promotion included advertising by the national and regional broadcast media, magazines, and newspapers.

18.     To further their goals of creating and expanding the market for Propulsid, the Defendants entered into agreements with chain pharmacies to have pharmacists include a pharmacy newsletter, promoting Propulsid, with a customer's prescription order for a competing product. Pharmacy customers who purchased a competing drug, such as Prilosec, automatically received a pharmacy newsletter stating that Propulsid may be more appropriate for them.

19.     The Defendants also targeted purchasers of over-the-counter products in their direct-to-consumer campaign, by having pharmacies print a toll-free telephone number (to call if the consumer suffered from nighttime heartburn) on the back of cash register receipts.

20.     In addition, Defendants also employed the use of a 1-800 number to promote use of Propulsid. As of February 1998 Defendants had collected over 300,000 names in its GI patient database through 1-800 number callers. Callers received customized mailings "with one specific thing in mind, converting them to get a script for Propulsid," said Janssen Gastroenterology and

- 4 -

Mycology Group Director, Joseph Sanger, in January, 1998.

21.     The Defendants also targeted managed care as part of their efforts to create demand for Propulsid.  The Defendants' program consisted of providing brochures and lifestyle management materials for managed care provider use, which included the toll-free telephone number for the Defendants' GI database.

22.     Defendants failed to provide adequate warnings concerning the use of Propulsid by children or the recommended dosage for use by children.  Nevertheless, Defendants' marketing efforts resulted in numerous prescriptions by misinformed pediatricians to their patients.  As a direct and proximate result of the Defendants' omissions and actions, the use of Propulsid has resulted in the deaths of children.

23.     The Defendants knew, as early as 1996, that there were published reports indicating that Propulsid can induce cardiac rhythm disturbances.

24.     Within a short time of the drug's release, the Defendants began receiving adverse drug reports of patients suffering from cardiac arrhythmia after taking Propulsid, including associated deaths.

25.     Until 1995, Propulsid contained no warning of any risk of cardiac rhythm disturbances associated with its use.

26.     In 1998, reports of serious adverse events, including death from sudden cardiac arrest, prompted the FDA to issue its first warning about the drug.  As consumers continued to suffer adverse consequences from Propulsid, the FDA required its label be revised four times, with increasingly strong warnings as to heart rhythm disturbances and contraindicated co-administration with other medications.  In January 2000, the FDA issued strong warnings, including a

- 5 -

recommendation that patients be given an electrocardiogram and have their serum electrolytes checked before deciding whether to prescribe Propulsid for them.

27.     As of December 31, 1999, the FDA had reports of 341 incidents of serious heart rhythm disturbances and 80 deaths associated with the use of Propulsid. From January 1, 2000, to March 28, 2000, an additional 23 deaths associated with Propulsid were reported to the FDA. More than half of these additional deaths were of people less than 60 years of age, including one nine-month-old infant.

28.     Despite these reports of deaths and cardiac rhythm disturbances, the Defendants failed to provide adequate warnings to consumers of the causal connection between Propulsid and heart rhythm disturbances, and of the dangerous interaction of Propulsid with many other medications.

29.     The Defendants issued four "Dear Doctor" letters concerning the cardiac risks of Propulsid, one each in 1995, 1998, 1999, and 2000.

30.     The Defendants' product warnings, despite their revisions, failed to adequately warn Plaintiffs and/or prescribing physicians of the actual risks of Propulsid.

31.     Despite the more than 100 reported deaths through March 2000, the Defendants had not withdrawn Propulsid from the marketplace. Instead, on March 23, 2000, they announced that they would stop "marketing" Propulsid; but they continued distributing Propulsid until July 14, 2000, and they allowed it to be sold in pharmacies until mid-August, 2000. The Defendants continue to sell Propulsid through a limited access program. The Defendants' restriction to limited access was intended to, and did in fact, preempt a scheduled FDA Advisory Committee meeting to review Propulsid's safety data, which was to have taken place on April 14, 2000.

32.     The Defendants' marketing efforts were so aggressive that in December 1996, the

- 6 -

FDA's Division of Drug Marketing, Advertising and Communications condemned one of the Defendants promotional brochure for Propulsid for implying that acid suppressing agents (proton pump inhibitors) were less effective than Propulsid for treating GERD. The FDA also concluded that Defendants' brochure was otherwise misleading and lacking in fair balance.

33.    Defendants' aggressive and relentless marketing efforts were nevertheless an astonishing success. The drug at one time was available in 89 countries and has been prescribed more than 30 million times since its debut in 1993, including 6 million prescriptions in 1999 alone.

34.    Defendants reaped impressive financial rewards from Propulsid sales, which in 1999 were approximately $1 billion. In 1999, Propulsid ranked 63rd in prescriptions filled among all prescription drugs.

35.    Defendants' wrongful acts complained of herein originated, occurred, emanated from and/or were orchestrated from New Jersey where Defendants Johnson and Janssen maintain their principal places of business. The corporate decisions regarding the aggressive promotion of Propulsid and how it was to occur were made in New Jersey. The sales and marketing materials were developed and approved in New Jersey and emanated from that state. The training materials provided to the sales people or "detail people" were developed, created and approved in New Jersey. The drug's labels and warnings were developed and approved in New Jersey. The decisions to maintain this drug on the market in light of the rising death and injury toll were likewise made in New Jersey. Propulsid was researched, tested, developed, manufactured, marketed, distributed and sold in New Jersey. The Defendants have their corporate headquarters in New Jersey.

36.    By virtue of the conduct of the Defendants exclusively occurring in New Jersey as described above and as New Jersey policies would be most seriously impaired if its law were not

- 7 -

applied, the Defendants are liable to Plaintiffs under the laws of the State of New Jersey, including, but not limited to, the New Jersey Products Liability Act, N.J.S.A. 2A:58C-1-11; the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-19; and New Jersey law relating to punitive damages as a result of egregious conduct and/or fraud.

37.     Alternatively, the Defendants' liability arises by virtue of Louisiana law.

**COUNT I**

**FIRST CAUSE OF ACTION**

**Negligence**

38.     Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

39.     Defendants had a duty, which duty continues, to Plaintiffs to properly manufacture, design, formulate, test, produce, process, assemble, inspect, research, distribute, market, label, package, prepare for use, sell, and adequately warn of the risks and dangers of Propulsid.

40.     The Defendants breached the duties owed to Plaintiffs and as a direct result of those breaches, the Plaintiffs were damaged and injured.  The Defendants are responsible for all Plaintiffs damages.

41.     At all relevant times herein, Defendants negligently and carelessly manufactured, designed, formulated, produced, processed, assembled, inspected, distributed, marketed, labeled, packaged, prepared for use and sold the aforementioned product and failed to adequately test and warn of the risk and dangers of Propulsid.

42.     Defendants had a duty to exercise reasonable care in the design, manufacture, sale, and distribution of the drug Propulsid, including a duty to assure that the product did not cause

- 8 -

Plaintiffs to suffer from unreasonable, dangerous side effects when used alone or in foreseeable combination with other drugs or cause Plaintiffs to sustain losses.

43.     Defendants were negligent in the design, manufacturing, testing, advertising, marketing, promotion, labeling, warnings given, and sale of Propulsid in that, among other things, they:

        (a)    Failed to ascertain and report the existence, nature and extent of the risk of heart problems caused by Propulsid;

        (b)    Failed to accompany the product with proper warnings regarding all possible adverse side effects associated with the use of Propulsid;

        (c)    Failed to effectively warn Plaintiffs and physicians that numerous other methods of reducing gastroesophageal reflux disease, including non-drug methods, should be the first or exclusive method of reducing this disease, particularly for certain high risk individuals;

        (d)    Failed to conduct adequate pre-clinical and clinical testing and post-marketing surveillance to determine the safety of the drug Propulsid;

        (e)    Failed to provide adequate training and instruction to medical care providers for appropriate use of the drug

Propulsid;

(f)     Failed to warn Plaintiffs, prior to actively encouraging
        the sale of Propulsid, either directly or indirectly,
        orally or in writing, about the following: 1) the need
        for a battery of diagnostic tests to be performed on the
        patient prior to ingesting Propulsid to discover and
        ensure against potentially fatal side effects; or 2) the
        need for comprehensive, regular medical monitoring
        to ensure early discovery of potentially fatal side
        effects;

(g)     Failed to warn that the risks associated with the
        ingestion of Propulsid exceeded the risks of other
        comparable forms of medication for heartburn;

(h)     Failed to effectively warn about the increased danger
        and potentially fatal relationship in combining use of
        Propulsid with various other drugs or use with certain
        identifiable disorders;

(i)     Negligently marketed Propulsid for both adult and
        pediatric use despite the fact that the risks of the drug
        were so high and the benefits of the drug were so
        speculative that no reasonable pharmaceutical
        company, exercising due care, would have done so

- 10 -

and despite the fact that the FDA refused to give its approval for the pediatric use of Propulsid;

(j)     Recklessly, falsely, and deceptively represented or knowingly omitted, suppressed, or concealed material facts regarding the safety and efficacy of Propulsid from prescribing physicians and the Plaintiffs, and that had prescribing physicians and the Plaintiffs known of such facts, the drug Propulsid would never have been prescribed to, or used by, Plaintiffs;

(k)     Remained silent despite their knowledge of the growing public acceptance of misinformation and misrepresentations regarding both the safety and efficacy of Propulsid, and did so because the prospect of huge profits outweighed health and safety issues, all to the significant detriment of Plaintiffs;

(l)     Failed to have reasonable and meaningful warnings regarding the significant risk of cardiac problems associated with Propulsid. The warnings given by the Defendants did not accurately reflect the existence of the risk, let alone the evidence, symptoms, scope or severity of such injuries;

(m)     Failed to perform their post-manufacturing and

- 11 -

continuing duty to warn which arose when they knew, or with reasonable certainty should have known, that their drug was being prescribed in a fatal or injurious combination or manner;

(n)     Placed into the stream of commerce a drug so defective and unreasonably dangerous in design, taking into consideration the utility of the product and the risk involved in its use;

(o)     Marketed and sold a drug no reasonable pharmaceutical company exercising due care would have because the drug was ineffective for its intended use and produced enormous risk of life threatening complications;

(p)     Engaged in a scheme to market Propulsid as a relatively harmless, effective drug, when in fact its use carried serious risks, and the drug was only minimally efficacious; and

(q)     Were otherwise careless, negligent, grossly negligent, reckless, and acted with willful, wanton and a malicious disregard for the rights of Plaintiffs.

44.     Despite the fact that the Defendants knew or should have known that Propulsid caused unreasonable, dangerous side effects which many users would be unable to remedy by any

- 12 -

means, the Defendants continued to market Propulsid to consumers, including Plaintiffs, when there were safer alternative methods of reducing heartburn.

45.     Defendants knew or should have known that consumers such as Plaintiffs would forseeably suffer injury as a result of the Defendants' failure to exercise ordinary care as described above.

46.     Defendants' actions as described herein constitute knowing omissions, suppression, or concealment of material facts, made with the intent that Plaintiffs rely upon such concealment, suppression, or omissions, causing a loss or inconvenience to Plaintiffs, or to obtain an unjust advantage for Defendants.

47.     As the direct and proximate cause and legal result of the Defendants' failure to appropriately warn Plaintiffs and physicians of the risks associated with Propulsid, and as a direct and legal result of the negligence, carelessness, other wrongdoing and actions of Defendants described herein, the Plaintiffs who purchased and/or ingested Propulsid suffer a significantly increased risk of heart disease, death, and/or related cardio-dysfunctions, Plaintiffs suffer losses of consortium, services, society, love and affection and loss of support because loved ones ingested Propulsid, and Plaintiffs suffer economic damage from the purchase of Propulsid.

48.     Defendants' negligence was a proximate cause of all damages suffered by Plaintiffs.

## COUNT II

## SECOND CAUSE OF ACTION

### Negligence Per Se

49.     Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

50.     At all material times herein, Defendants had an obligation not to violate the law in the manufacture, design, formulation, compounding, testing, production, processing, assembly, inspection, research, distribution, marketing, labeling, packaging, preparation for use, sale and warning of the risks and dangers of Propulsid.

51.     Defendants' acts as described herein render Propulsid and/or its labeling as a "misbranded drug" as defined by La. R.S. 40:601 et seq., the State Food, Drug and Cosmetic Law. These violations of statutes and breaches of duty subject Defendants to civil liability for all damages to Plaintiffs arising therefrom.

52.     At all material times herein, Defendants violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 201, et seq., related amendments and codes and regulations provided thereunder, the Sherman Food, Drug and Cosmetic Law, and other applicable laws, statutes and regulations of New Jersey, Louisiana and the United States.

53.     Plaintiffs, as purchasers, consumers, and persons sustaining damages due to Propulsid are within the class of persons the statutes and regulations described above are designed to protect, and Plaintiffs' injuries are the type of harm these statutes are designed to prevent.

54.     Defendants failed to meet the standard of care set by the forgoing statutes and regulations, which were intended for the benefit of individuals such as Plaintiffs, making Defendants negligent per se as: (a) the Labeling lacked adequate information on the use of the drug Propulsid; (b) the Labeling failed to provide adequate warnings of severe and disabling medical conditions including, without limitation: deadly, irregular heartbeats; ventricular fibrillation; heart disease; and other adverse medical conditions as soon as there was reasonable evidence of their association with the drug; (c) there was inadequate information for Plaintiffs and physicians to know how safe and

- 14 -

efficacious Propulsid was; (d) there was inadequate information regarding special care to be exercised by the physician for safe and effective use of Propulsid; and (e) the Labeling was misleading.

55.     As a result of the violations of the statutes described above, Plaintiffs suffered injuries and damages as alleged herein for which the Defendants are liable.

**COUNT III**

**THIRD CAUSE OF ACTION**

**Strict Product Liability**

56.     Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

57.     The drug, Propulsid, is an unreasonably dangerous product as defined by La. R.S. 9:2800.51, et seq., the Louisiana Products Liability Act. The Defendants are manufacturers and are liable to all Plaintiffs for all injuries and loses proximately caused thereby.  Propulsid is unreasonably dangerous and defective in that the risk that it causes outweighs its benefits in treating GERD.

58.     Plaintiffs were proximately damaged by characteristics of Propulsid that rendered it unreasonably dangerous, especially considering that the damage arose from a reasonably anticipated use of Propulsid by Plaintiffs.  More particularly, Propulsid is unreasonably dangerous in construction or composition and/or in design, because inadequate warnings about Propulsid were provided and because it did not conform to an express warranty of the Defendant manufacturers.

59.     Propulsid is unreasonably dangerous in design since at all pertinent times, there existed an alternative design for Propulsid capable of eliminating or reducing the inherent dangers

- 15 -

posed by Propulsid.  The likelihood that Propulsid would damage Plaintiffs and the gravity of that harm outweigh any burden on the Defendants in adopting a reasonable safer design.

60.     Propulsid was unreasonably dangerous and had inherent defects at the time it left the control of the Defendant manufacturer.

61.     The drug Propulsid was unreasonably dangerous and defective at the time of its manufacture, development, production, testing, inspection, endorsement, prescription, sale and distribution, in that, and not by way of limitation, Propulsid and its warnings, instructions and directions failed to warn of its dangerous propensities particularly, its cardiac rhythm disturbance potential, which risks were known or reasonably scientifically knowable to Defendants.  The Defendants, and each of them, knew or should have known of the defective condition, characteristics and risks and unreasonably dangerous nature associated with said product.

62.     Propulsid was unaccompanied by proper, reasonable and effective warnings regarding all possible adverse side-effects, the comparative severity and duration of such adverse effects, or the true potential and/or likelihood or rate of the side effects.  Defendants failed to perform adequate testing which would have shown that Propulsid possessed serious potential side effects with respect to which full and proper warnings accurately and fully reflecting symptoms, scope and severity should have been made to Plaintiffs with respect to the use of Propulsid.

63.     Additionally, Propulsid is unreasonably dangerous in that it was marketed to population segments, and for conditions, other than those approved by the FDA.

64.     Defendants had actual knowledge of the defects in Propulsid and the potential dangers to Plaintiffs.  In the alternative, the Defendants are manufacturers of Propulsid and are therefore presumed to know of the defects and associated risks.

- 16 -

65.     As the proximate cause and legal result of the unreasonable dangerous and defective condition of Propulsid as manufactured and/or supplied and/or distributed and/or sold by Defendants, and as a direct and legal result of the negligence, carelessness, other wrongdoing and action(s) of Defendants described herein, Plaintiffs have been damaged.

66.     Defendants' liability stems from violations of the New Jersey Products Liability Act, N.J.S.A. 2A:58C-1-11, as well as from violations of Louisiana Products Liability Act, La. R.S. 9:2800.51, et seq.

**COUNT IV**

**FOURTH CAUSE OF ACTION**

**Strict Product Liability**

**Restatement Second of Torts 402a (1965)**

67.     Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

68.     The Propulsid manufactured and/or distributed and/or supplied by Defendants was defective in design or formulation in that, when it left the hands of the manufacturers and/or suppliers and/or distributors, the foreseeable risks exceeded the benefits associated with the design or formulation.

69.     Moreover, the Propulsid manufactured and/or distributed and/or supplied by Defendants was defective in design or formulation in that, when it left the hands of the Defendants, it was unreasonably dangerous, i.e, more dangerous than an ordinary consumer would expect and more dangerous than other drugs for the treatment of GERD.

70.     There existed, at all times material hereto, safer alternative medications.

- 17 -

71.     Defendants did not perform adequate testing on Propulsid.  Adequate testing would have shown that Propulsid caused serious adverse effects with respect to which full and proper warnings accurately and fully reflecting symptoms, scope and severity should have been made.

72.     The Propulsid manufactured, designed, marketed, distributed and/or sold by Defendants was unaccompanied by proper and adequate warnings regarding adverse effects associated with the use of Propulsid, the severity, symptoms, scope and duration of such adverse effects, and its lack of efficacy.

73.     The Propulsid manufactured and/or distributed and/or supplied by Defendants was defective due to inadequate post-marketing warning or instruction because, after the Defendants knew or should have known of the risk of injury from Propulsid, they failed to provide adequate warnings to Plaintiffs and physicians and continued to promote Propulsid.

74.     As a result of the defective condition of Propulsid, Plaintiffs have been damaged and the Defendants are responsible for all damage.

## COUNT V

## FIFTH CAUSE OF ACTION

### Breach of Express Warranty

75.     Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

76.     Defendants expressly warranted that Propulsid was safe and well accepted by clinical studies.

77.     Propulsid does not conform to these express representations because Propulsid is not safe and has high levels of serious, life-threatening side effects.

- 18 -

78.     At all times herein mentioned, Defendants expressly warranted to Plaintiffs and Plaintiffs' physicians, by and through statements made by Defendants or their authorized agents or sales representatives, orally and in publications, package inserts and other written materials intended for physicians, Plaintiffs and the general public, that Propulsid was safe, effective, fit and proper for its intended use.

79.     In utilizing Propulsid, Plaintiffs relied on the skill, judgment, representations and foregoing express warranties of the Defendants.

80.     The Defendants breached these express warranties because Propulsid was unsafe, not of merchantable quality, and unfit for its intended use.

81.     As a direct and proximate result of the breach of said warranties, Plaintiffs have been damaged and the Defendants are responsible for all damage.

**COUNT VI**

**SIXTH CAUSE OF ACTION**

**Breach of Implied Warranty**

82.     Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

83.     Prior to the time that Propulsid was used by Plaintiffs, Defendants, and each of them, impliedly warranted to Plaintiffs and Plaintiffs' agents and physicians that said product was of merchantable quality and safe and fit for the use for which it was intended.

84.     Plaintiffs are unskilled in the research, design and manufacture of Propulsid and reasonably relied entirely on the skill, judgment and implied warranty of the Defendants in buying and/or ingesting Propulsid.

- 19 -

85.     Propulsid was neither safe for its intended use nor of merchantable quality, as warranted by Defendants, in that it had dangerous propensities when put to its intended use would cause severe injuries to the user.

86.     As a direct and proximate result of the breach of said warranties, Plaintiffs have been damaged and the Defendants are responsible for all damage.

## COUNT VII

## SEVENTH CAUSE OF ACTION

### Violation of New Jersey Consumer Fraud Act
### And Louisiana Unfair Trade Practices and Consumer Protection Law

87.     Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

88.     Plaintiffs bring this cause of action pursuant to the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, et seq., in that Plaintiffs purchased and used Propulsid primarily for their personal medical use and thereby suffered ascertainable loss as a result of Defendants violations.

89.     Prescription drugs are "merchandise" as that term is defined by N.J.S.A. 56:8-1(c) and Propulsid is a prescription drug.

90.     Defendants are manufacturers, marketers, and/or distributors of Propulsid.

91.     Unfair methods of competitive and unfair or deceptive acts or practices are defined and declared unlawful in N.J.S.A. §56:8-1, *et seq.*:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the

- 20 -

> subsequent performance of such person as aforesaid, whether or not
> any person has in fact been misled, deceived or damaged thereby, is
> declared to be an unlawful practice.

92.     Defendants omitted, suppressed, or concealed material facts concerning the dangers

and risks associated with the use of Propulsid, including but not limited to the risks of heart disease

and cardiovascular injury.  Further, Defendants purposely downplayed and understated the serious

nature of the risks associated with Propulsid use in order to increase the sales of Propulsid.

93.     Defendants' practice of promoting Propulsid (a) created or reinforced a false

impression as to the safety of taking Propulsid for the treatment of GERD, and (b) places all

consumers of Propulsid at risk for serious and potentially lethal side effects.

94.     In their interaction with the FDA regarding the safety and efficacy of Propulsid,

Defendants falsely and deceptively misrepresented or knowingly omitted, suppressed, or concealed

facts of such materiality that, had the FDA known of such facts, the drug would never have been

approved and no physician would have been able to prescribe this drug to Plaintiffs.

95.     The promotion of Propulsid by Defendants constitutes an unconscionable commercial

practice, deception, false pretense, misrepresentations, and/or knowing concealment, suppression,

or omission of material facts with the intent that others rely upon such concealment, suppression,

or omission in connection with the sale or advertisement of merchandise or services by Defendants.

96.     Defendants knew or should have known (or would have known had appropriate

testing been done) that use of Propulsid caused serious and potentially life-threatening side effects

of cardiovascular injury or death.

97.     Defendants engaged in calculated silence despite their knowledge of the growing

public acceptance of misinformation and misrepresentations regarding both the safety and efficacy

- 21 -

of the use of Propulsid, and did so because the prospect of significant future profits caused them to ignore concerns regarding health and safety issues, all to the significant detriment of the public, including the Plaintiffs.

98.     Many safer and less expensive indigestion agents were available to patients being treated with Propulsid.

99.     Defendants purposefully minimized the side effects or provided misinformation about adverse reactions and potential harms from Propulsid, and succeeded in persuading large segments of the relevant consumer market to request, and large segments of the medical community to prescribe, Propulsid despite both the lack of efficacy and the presence of significant dangers, as set forth herein.

100.    Defendants had a post-manufacturing and continuing duty to warn, which arose when they knew, or with reasonable care should have known, that Propulsid was injurious or fatal.

101.    Defendants continued marketing, distributing and selling Propulsid constitutes an unconscionable, fraudulent and deceptive business practice.

102.    Defendants omitted, suppressed, or concealed material facts concerning the dangers and risks associated with the use of Propulsid, including but not limited to the risks of death, severe heart disease and other health problems associated with the use of Propulsid.

103.    Defendants falsely and deceptively misrepresented or knowingly omitted, suppressed or concealed facts of such materiality regarding the safety and efficacy of Propulsid to or from the FDA such that, had the FDA known of such facts, the drug would never have been approved and no physician would have been able to prescribe this drug to Plaintiffs.

104.    Defendants' statements and omissions were undertaken with the intent that the public,

- 22 -

including Plaintiffs, and prescribing physicians would rely on Defendants' statements and omissions.

105.    Defendants' actions as set forth herein constitute knowing omission, suppression or concealment of material facts, made with the intent that others will rely upon such concealment, suppression or omission, in connection with the marketing of Propulsid.

106.    Defendants' actions as described above evidence lack of good faith, honesty in fact and observance of fair dealing so as to constitute unconscionable commercial practices.

107.    Such unconscionable commercial practices make Defendants liable to the Plaintiffs under New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2, which provides that: "Any person violating the provisions of the within act shall be liable for a refund of all moneys acquired by means of any practice declared herein to be unlawful."

108.    As a proximate result of these violations of the New Jersey Fraud Act, Plaintiffs have suffered ascertainable loss -- economic losses that include the purchase price of the drug, the out-of-pocket cost of interim medical tests and services and other costs incidental to their ingestion of a harmful and defective produce - - for which Defendants, jointly, severally, and in solido are liable to Plaintiffs in an amount treble their actual damages.

109.    N.J.S.A. §56:8-13, 19 provides Plaintiffs with standing to commence this action, recover treble damages, attorneys' fees and costs:

**56:8-19. Fraud, etc., in connection with sale or advertisement of merchandise or real estate as unlawful practice.**

Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act or the act hereby amended and supplemented may bring an action or assert a counterclaim therefor in any court of competent jurisdiction.  In any action under this section the court shall, in addition to any other appropriate legal or equitable relief, award threefold the damages

- 23 -

sustained by any person in interest.  In all actions under this section the court shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit.

110.    The practice of Defendants, as herein described, have injured Plaintiffs.

111.    As a direct and proximate cause of Defendants' acts of consumer fraud, Plaintiffs have suffered economic losses that include the purchase price of the drug and other out-of-pocket healthcare related costs for which Defendants are liable to Plaintiffs for treble their actual damages.

112.    As a direct and proximate result of Defendants' promotion of Propulsid, Plaintiffs have been exposed to a drug that causes undisclosed serious and life-threatening side effects. Accordingly a medical monitoring program, as described herein, is both reasonable and medically necessary.

113.    As a result of their conduct described above Defendants have been and will be unjustly enriched.  Specifically, Defendants have been unjustly enriched by receipt of millions of dollars from the sale of Propulsid, sold in large part as a result of the acts and omissions described herein.

114.    Because of the acts and omissions made by Defendants as detailed above, and the inherently unfair practice of committing a fraud against the public by misleading and concealing material information, the acts of Defendants describe herein constitute unfair or fraudulent business practices.

115.    The Defendants' marketing, distribution, and sale of Propulsid constitutes an unconscionable, fraudulent and deceptive business practice, as well as an intentional, wanton, reckless, and/or malicious disregard for health and safety, rendering Defendants also liable for punitive damages.

- 24 -

116.     Defendants are additionally liable to Plaintiffs and must provide restitution, and disgorge the monies collected and profits realized by Defendants, as a result of their unfair business practices.

117.     Plaintiffs also seek injunctive relief in the form of a court-administered medical monitoring program, to be funded by Defendants, to provide Plaintiffs with medical monitoring as supported by the evidence.  Said program would be funded through disgorgement of monies collected by Defendants.

118.     Defendants' liability for all Plaintiffs' damages, compensatory, punitive, and exemplary arise, alternatively, under Louisiana law, particularly, Louisiana's Unfair Trade Practices and Consumer Protection Law, La. R.S. 51:1401, et seq.

119.     Plaintiffs have suffered an ascertainable loss of money as a result of Defendants' unfair or deceptive acts and is entitled to recover actual damages, treble damages, reasonable attorneys fees and costs.

## COUNT VIII

## EIGHTH CAUSE OF ACTION

### Medical Monitoring

120.     Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

121.     As a proximate result of their ingestion of Propulsid, Plaintiffs have significantly increased risk of serious latent disease, including potentially fatal heart disease.  Plaintiffs have been harmed and are in immediate need of medical monitoring.

122.     Plaintiffs are entitled to recover the cost of ongoing periodic medical monitoring,

- 25 -

reasonably needed to monitor their condition.  Plaintiffs have suffered a manifest physical and/or mental injury and/or disease, including, but not limited to, damages to the heart muscle, prolonged QT interval, and/or arrhythmia, for which present and future medical treatment is required, including, but not limited to, routine evaluation, diagnosis and treatment of such manifest physical and/or mental injuries and/or diseases.

123.    Defendants' negligent and wrongful acts are a proximate cause of the Plaintiffs' suffering an increased risk of serious injury and disease, which they will continue to suffer. Plaintiffs have been exposed to a hazardous product and suffer a significantly increased risk of contracting serious injury including heart disease and/or cardiovascular injury.  This increased risk makes periodic diagnostic and medical examinations reasonable and necessary.

124.    Medical monitoring is particularly appropriate, and, indeed, imperative, with respect to this action due to the following:

> a.    Propulsid has been found to cause prolongation of the QT interval, heart disease and/or cardiovascular injury.
>
> b.    It has been discovered, both through scientific research and through review of Adverse Event Reports made to the FDA, that the injury and damage caused by Propulsid is often latent, asymptomatic and/or undiscovered.

125.    Early detection and diagnosis of these diseases is clinically invaluable since it can prevent, reduce and/or significantly delay resulting discomfort, suffering and/or death and since these

conditions can be often asymptomatic absent proper testing.

126.    Easily administered, cost-effective monitoring and testing procedures exist which make the early detection and treatment of such injuries or disease possible and beneficial. For example, administration of the several readily available non-invasive tests diagnose the presence of prolongation of the QT interval, heart disease and/or cardiovascular injury, even in asymptomatic individuals. Early diagnosis of these diseases and conditions will allow prompt and effective treatment which will reduce the risk of morbidity and mortality which these patients would suffer if treatment were delayed until their condition became overtly symptomatic.

127.    The recommended testing procedures will be subject to expert testimony at the time of trial. Appropriate testing regimes will likely include non-invasive, readily administrable initial tests and procedures.

128.    Many individuals at risk for heart disease and cardiovascular injury cannot afford to get appropriate testing and/or have not been advised, and do not otherwise know, of the need to undergo testing. Plaintiffs also need to be advised of the availability of non-invasive testing as a diagnostic tool and treatment which will prevent even more grave injury.

129.    The increased susceptibility to injuries and irreparable threat to the health of Plaintiffs resulting from their exposure to Propulsid and resulting injury can only be mitigated or addressed by the creation of a comprehensive medical monitoring program:

>           a.    Notifying individuals who use or used Propulsid of
>                 the potential harm from Propulsid either alone or in
>                 combination with other drugs;
>
>           b.    Funding further studies of the long term effects of

- 27 -

Propulsid either alone or in combination with other
drugs;

c.      Aiding in the early diagnosis and treatment of
resulting injuries through ongoing testing and
monitoring of the users of Propulsid;

d.      Providing for medical examinations for Plaintiffs;

e.      Providing for accumulation and analysis of relevant
medical and demographic information from Plaintiffs
including, but not limited to the results of tests
performed on Plaintiffs;

f.      Providing for the creation, maintenance, and operation
of a registry in which relevant demographic and
medical information concerning all Plaintiffs are
gathered, maintained and analyzed;

g.      Providing for medical research concerning the
incidence, prevalence, natural course and history,
diagnosis and treatment of Propulsid induced
diseases; and

h.      Publishing and otherwise disseminating all such
information to Plaintiffs and their physicians.

130.    Plaintiff have no adequate remedy at law in that monetary damages alone do not
compensate for the continuing nature of harm. A monitoring program will enable Plaintiffs to

ascertain the presence of injury and/or disease which are presently asymptomatic or only slightly symptomatic. Early detection and warnings aid in Plaintiffs' treatment and may prevent greater harms if the adverse conditions caused by Propulsid are treated before they become worse.

131. Without a court-approved medical monitoring program, Plaintiffs, the users of Propulsid, will not receive prompt medical care which could prolong their productive lives, increase prospects for improvement and minimize disability. Plaintiffs do not have an adequate remedy at law.

132. By reason of the foregoing, Defendants are liable jointly, severally and in solido to Plaintiffs for injunctive and equitable relief including periodic medical monitoring, described above.

**COUNT IX**

**NINTH CAUSE OF ACTION**

**Unjust Enrichment**

133. Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

134. Defendants have been unjustly enriched in the amount of the profits they have earned as a result of the Defendants' conduct as alleged herein.

135. The Defendants have been unjustly enriched at the expense of and to the detriment of the Plaintiffs and should be ordered to disgorge the profits they made from their wrongful sale of Propulsid for the benefit of Plaintiffs.

## COUNT IX

## TENTH CAUSE OF ACTION

### Redhibition

136.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

137.    The drug Propulsid referred to herein contains a vice or defect which renders it absolutely useless or its use so inconvenient and imperfect that it must be supposed that Plaintiffs would not have purchased it had they known of the vice.

138.    Propulsid was not fit for its intended purpose, and posed an unreasonable risk of harm.

139.    The hazards associated with Propulsid render the product useless, or, in the alternative, so inconvenient that Plaintiffs would not have purchased it had they known of its defective nature.

140.    Propulsid was not reasonably fit for its ordinary, foreseeable and anticipated use. Defendants knew that Plaintiffs intention was to ingest Propulsid and that Plaintiffs relied on the Defendants skill in manufacturing and selling it.

141.    Propulsid's many defects existed before delivery of Propulsid to Plaintiffs.

142.    The Defendants impliedly or expressly represented that the drug Propulsid manufactured, distributed and/or sold for Plaintiffs' use would not cause the adverse health effects described herein.  Presence of the unsafe characteristics of the drug Propulsid is an absolute vice as provided by La. Civil Code Articles 2520 et. seq., rendering Defendants liable in redhibition.

143.    Defendants, as sellers and manufacturers, either knew or should have known of the

- 30 -

redhibitory defect, and failed to declare it to Plaintiffs or alternatively, the Defendants declared Propulsid has a quality that they knew it did not have. Defendants, as sellers and manufacturers, are liable for return of the purchase price with interest from the time it was paid, reimbursement of expenses occasioned by the sale and reasonable attorney's fees as provided by La. Civil Code Articles 2545 and 1953, et. seq.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray after due proceedings had, including trial by jury, that judgment be rendered in favor of Plaintiffs and against Defendants, Johnson & Johnson and Janssen Pharmaceutica, Inc., jointly, severally and in solido for:

a.     all compensatory, wrongful death, punitive, treble and exemplary damages, if applicable, to which they are entitled by New Jersey or Louisiana law, in an amount to be proven at trial for the wrongful acts complained of;

b.     a medical monitoring program to deliver services, including, but not limited to, testing, preventive screening and surveillance for conditions resulting from, or potentially resulting from consumption of Propulsid, as well as establishment of a medical research and education fund and a medical/legal registry;

c.     a refund and restitution of all monies acquired from the sale of Propulsid to Plaintiffs;

d.     a return of the sales price to the Plaintiff buyers of Propulsid, with interest from the time it was paid and reimbursement for the reasonable expenses occasioned by the sale;

e.     an award of pre-judgment and post-judgment interest;

f.     an award of costs and expenses in this litigation, including, but not limited

- 31 -

to, expert fees and reasonable attorneys' fees;

       g.    the costs of this litigation; and

       h.    an award for such other and further relief as may be just and proper.

Respectfully submitted:

*[handwritten: Service accepted - All rights reserved James Irwin]*

**RUSS M. HERMAN, T.A. (La. Bar #6819)**
LEONARD A. DAVIS, #14190
JAMES C. KLICK, #7451
HERMAN, MATHIS, CASEY & KITCHENS, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax:    (504) 561-6024
**LIAISON COUNSEL FOR PLAINTIFFS**
**On Behalf of All Attorneys Identified For Each Claimant Listed on Exhibits "A" and "B"**

DANIEL E. BECNEL, JR.
106 W. Seventh Street
Reserve, LA 70084-0508
Phone: (504) 536-1186
Fax: (504) 536-6445

WENDELL H. GAUTHIER
3600 North Hullen Street
Metairie, LA 70002
Phone: (504) 456-8600
Fax: (504) 456-8624

ARNOLD LEVIN
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3875
Phone: (215) 592-1500
Fax: (215) 592-4663

STEPHEN B. MURRAY
909 Poydras Street, Suite 2550
New Orleans, LA 70112
Phone: (504) 525-8100
Fax: (504) 584-5249

J. MICHAEL PAPANTONIO
316 S. Baylen Street, Suite 600
P.O. Box 12308
Pensacola, FL 32581
Phone: (850) 435-7000
Fax: (850) 435-7020

CHRISTOPHER A. SEEGER
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799

BOB F. WRIGHT
556 Jefferson Street, Suite 500
Lafayette, LA 70502-3668
Phone: (337) 233-3033
Fax: (337) 232-8213

CHARLES S. ZIMMERMAN
901 North Third Street, Suite 100
Minneapolis, MN 55401-1016
Phone:  (612) 341-0400
Fax: (612) 341-0844

**PLAINTIFFS' STEERING COMMITTEE**

## *CERTIFICATE OF SERVICE*

I hereby certify that the above and foregoing has been served on defendants liaison counsel, James Irwin by hand delivery or electronically and upon all plaintiffs counsel of record electronically or by electronically being uploaded to Verilaw in accordance with Pre-Trial Order No. 4 this 13th day of July, 2001.

RUSS M. HERMAN,
*Plaintiffs' Liaison Counsel*

# SEE RECORD FOR
# EXHIBITS
# OR
# ATTACHMENTS
# NOT SCANNED